UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA
FOR THE USE AND BENEFIT OF
LEE BRICK PRODUCTS, INC.                                                  Plaintiff,

v.                                                                   CASE NO. 3:13-cv-958-CHL

FORREST B. WHITE, Jr. MASONRY, INC., et al.,                     Defendants,

## Memorandum Opinion and Order

Lee Brick Products, Inc. ("Lee Brick") filed this Miller Act lawsuit against Forrest B. White, Jr. Masonry, Inc. ("White Masonry"); ACC Construction, Co., Inc. ("ACC Construction"); and Liberty Mutual Insurance Company ("Liberty Mutual") (together, the "Defendants"). The parties consented to magistrate judge jurisdiction. (DN 52.)

Lee Brick moves for summary judgment and for a hearing on its motion. (DNs 62 & 63.) ACC Construction and Liberty Mutual also move for summary judgment. (DN 68.)

The Court will grant summary judgment to Lee Brick and deny its motion for a hearing as moot. The Court will deny ACC Construction and Liberty Mutual's motion for summary judgment.

### Background

The following facts are undisputed, unless otherwise noted.

Lee Brick is a supplier of block, brick, and mortar. Between 2008 and 2009, White Masonry performed work as a subcontractor on a project at Fort Campbell (the "Fort Campbell Project"). Lee Brick supplied White Masonry with lightweight concrete masonry units for the Fort Campbell Project. The lightweight concrete masonry units Lee Brick supplied failed to meet certain standards and required extra labor, equipment, and materials on White Masonry's

1

part. Lee Brick and White Masonry attempted to resolve their differences informally by having Lee Brick credit White Masonry's account. White Masonry says that though Lee Brick issued some credits, Lee Brick owes White Masonry $110,000 for the Fort Campbell Project.

Around June 2011, a general contractor, ACC Construction, entered into a contract with the government for a project at Fort Knox (the "Fort Knox Project"). ACC Construction, as principal, and Liberty Mutual, as surety, executed a $9.8 million payment bond for the Fort Knox Project. The payment bond obligated ACC Construction and Liberty Mutual as follows:

> OBLIGATION:
>
> We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit is indicated, the limit of liability is the full amount of the penal sum.
>
> CONDITIONS:
>
> [T]he above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

(DN 1-2, #8 (brackets added).)

Lee Brick supplied White Masonry with $105,804.32 in construction materials for the Fort Knox Project. White Masonry did not pay Lee Brick that amount. White Masonry denies that it owes Lee Brick any money for the Fort Knox Project.

**Procedural History**

On October 7, 2013, Lee Brick sued White Masonry for nonpayment on the Fort Knox Project. (DN 1, ¶¶ 8, 10.) Lee Brick alleges that the payment bond obligates ACC Construction and Liberty Mutual, jointly and severally, for White Masonry's failure to pay. (*Id.*, ¶ 14.)

White Masonry counterclaimed against Lee Brick, alleging that Lee Brick owes White Masonry $110,000 in credits from the Fort Campbell Project, and those credits should offset any amount White Masonry owes for the Fort Knox Project. (DN 6, ¶¶ 7 – 10.)

Lee Brick moves for summary judgment on its two remaining claims and on White Masonry's counterclaim. (DN 62.) ACC Construction and Liberty Mutual responded, and Lee Brick replied. (DNs 63 & 64.) White Masonry did not respond to Lee Brick's motion.

ACC Construction and Liberty Mutual move for summary judgment on Lee Brick's claims against them. (DN 68.) Lee Brick responded, and ACC Construction and Liberty Mutual replied. (DNs 69 & 70.) White Masonry did not join in ACC Construction and Liberty Mutual's motion, nor did White Masonry separately move for summary judgment.

**Legal Standard**

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view the evidence, and the inferences to be drawn from that evidence, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The Court determines whether there is a genuine issue for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). Summary judgment is appropriate if the evidence is "so one-sided that one party must prevail as a matter of law." *Id.* at 251 – 52. "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will

not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247 – 48. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 249.

The "plain language" of the Rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322 – 23.

## Discussion

Under the Miller Act, before the federal government awards a contract over $100,000 to a general contractor, the general contractor must post a performance bond and a payment bond. 40 U.S.C. § 3131(b) (formerly *id.* § 270)). The payment bond must protect "all persons supplying labor and material in carrying out the work provided for in the contract for the use of each person." *Id.* § 3133(b)(2).

Under the Miller Act, a subcontractor is "one who performs for and takes from the prime contractor a specific part of the labor or material requirements of the original contract, thus excluding ordinary laborers and materialmen." *Clifford F. MacEvoy Co. v. U.S. for Use & Benefit of Calvin Tomkins Co.*, 322 U.S. 102, 107 – 08 (1944). A person who has a "direct contractual relationship with a subcontractor" may file suit on the payment bond if that person has not been paid in full within ninety days of supplying the material for the contract. 40 U.S.C.

§ 3133(b)(2). The payment bond's protection extends to sub-subcontractors, but no further. *J.W. Bateson Co., Inc., v. U.S. ex rel. Bd. of Tr. of Nat. Automatic Sprinkler Indus. Pension Fund*, 434 U.S. 586, 591 (1978).

A Miller Act lawsuit "must be brought no later than one year after the day on which the last of the labor was performed or material was supplied by the person bringing the action." 40 U.S.C. § 3133(b)(4); *see also*, *United States v. Int'l Fid. Ins. Co.*, 200 F.3d 456, 459 (6th Cir. 2000). The phrase "the last of the labor was performed or material was supplied" means "more than mere substantial completion or substantial performance of the plaintiff's obligations under its contract." 200 F.3d at 459. The Court asks whether the work performed was pursuant to the original contract or if it was performed as a correction or repair. *Id.* at 460. Work performed as a correction or repair does not toll the Miller Act's statute of limitations. *Id.* at 461. Similarly, remedial work does not toll the statute of limitations. *See id.* at 461 – 62.

The Court construes the Miller Act's protections liberally to effectuate its remedial purpose. *Illinois Sur. Co. v. John Davis Co.*, 244 U.S. 376, 380 (1917). The plaintiff may "recover from the principal or surety, or both, for work and material supplied." *U.S. ex rel. Statham Instruments, Inc. v. W. Cas. & Sur. Co.*, 359 F.2d 521, 524 (6th Cir. 1966).

**Analysis**

I. **ACC Construction and Liberty Mutual's motion for summary judgment**

ACC Construction and Liberty Mutual argue that the Miller Act's one-year statute of limitations bars Lee Brick's claims. (DN 68-1.) They argue that there is no admissible evidence that establishes that the items referred to on the October 10, 2012 invoice were ever delivered to the Fort Knox Project. (*Id.* at #598.) Then, ACC Construction and Liberty Mutual say, "all indications are that White Masonry had completed its original contract work by September of

5

2012 and was doing remedial work thereafter." (*Id.*) They point to invoices that they say show that White Masonry was only billing for retainage and remedial work; and they say the gap in billing indicates that White Masonry had substantially completed its work in September 2012. (*Id.* at #599.) "Thus, the only reasonable inference from this evidence is that the 10/10/12 invoice represents items used in non-qualifying work, assuming that they were ever delivered." (*Id.*)

Lee Brick argues that ACC Construction and Liberty Mutual have conceded that the October 10, 2012 invoice was timely. (DN 69, #607 – 08.) Then, Lee Brick argues that White Masonry admitted receiving the services or materials from each of the invoices referred to in the complaint. (*Id.* at #608.)

In reply, ACC Construction and Liberty Mutual argue that White Masonry's admission binds only White Masonry, not them. (DN 70, #613.) Further, they argue, White Masonry's admission does not establish that the material Lee Brick supplied relating to the October 10, 2012 invoice "was used for anything other than remedial work." (*Id.*) Additionally, White Masonry was billing for retainage, "which is usually paid only after base work is complete." (*Id.* at #614.) "Finally, there is the fact that the amount of the 10/10/12 invoice is relatively small in relation to most of the other invoices and follows a pretty significant return credit." (*Id.*) ACC Construction and Liberty Mutual say that taken together, the "only reasonable conclusion" is that the material Lee Brick supplied in October 2012 was for remedial work. (*Id.*)

The statute of limitations is an affirmative defense for which the defendant bears the burden of proof. *Fonseca v. Consolidated Rail Corp.*, 246 F.3d 585, 590 (6th Cir. 2001); *see also*, *Campbell v. Grand Trunk W. R.R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001) ("Because the statute of limitations is an affirmative defense, the burden is on the defendant to show that the

statute of limitations has run.") The documents on which ACC Construction and Liberty Mutual relied in support of its motion fall short of this burden.

ACC Construction and Liberty Mutual rely on three documents: a list of payments received by White Masonry from ACC Construction from December 2011 to November 2012 (DN 68-3); November 2012 emails between a project manager at ACC Construction and Forrest White (DN 68-4); and a White Masonry invoice to ACC Construction dated October 1, 2012 (DN 68-5). Looking at these three documents in the light most favorable to Lee Brick—as the Court must—a genuine issue of material fact remains as to whether the materials Lee Brick supplied after October 7, 2012 were for the original contract work or for remedial work.

ACC Construction's payment list documents about twenty payments to White Masonry, paid about twice a month, between December 2011 and November 2012. (DN 68-3, #603.) The second to last entry, dated September 13, 2012, indicates that ACC Construction owed White Masonry a $42,652.90 balance, which was marked as "Ret." (*Id.*) White Masonry argues that "Ret" refers to a retainage,[1] "which is usually paid only after base work is complete." (*See* DN 70, #614.) Then, the last entry on ACC Construction's payment list indicates that ACC Construction paid White Masonry a final payment of $42,652.90 on November 14, 2012. (DN 68-3, #603.)

The emails are between Matt McKnight, a project manager with ACC Construction, and Forrest White. On November 14, 2012, Forrest White asked McKnight for payment of $42,652, which included $18,719 for retainage. (DN 68-4, #604.) Other charges included $9,125 for

---

[1] ACC Construction and Liberty Mutual do not define "retainage." A retainage is "[a] sum withheld from progress payments to the contractor in accordance with the terms of the owner-contractor agreement." *Dictionary of Architecture & Constr.* 812 (4th ed. 2006) (brackets added); *see also*, *Illustrated Constr. Dictionary* 455 (4th ed. 2010) (similar).

7

scaffolding, $11,208 for "extra work from pr#10," and $3,600 for "pumping tops" for Hoosier. (*Id.*) McKnight responded, "Go ahead and pay it." (*Id.*)

White Masonry's October 1, 2012 invoice to ACC Construction totals $43,703.52. (DN 68-5, #605.) It includes two charges for renting scaffolding between July 2012 and September 2012; a charge of $11,208.52 for "Extra work for cutting out beams & repair work per Cecil & Mason ****SEE ATTACHED****;" and "Grouting tops for Hoosier." (DN 68-5, #605.)

Viewing ACC Construction's payment list in the light most favorable to Lee Brick, it is reasonable to infer that ACC Construction paid White Masonry the retainage of $42,652.90 on November 14, 2012 because the contract work was substantially complete on November 14. But, the Court is unwilling to infer that ACC Construction paid the retainage on November 14 because the work was substantially complete *before October 7*, when the payment list is silent as to activity between September 13 and November 14.

In the same vein, viewing the emails in the light most favorable to Lee Brick, it is reasonable to infer that ACC Construction paid White Masonry the retainage of $18,719 around November 14 because the contract was substantially complete on that date. However, the Court is disinclined to infer from the emails that the work was substantially complete *before October 7*, when the emails are silent to any activity before November 14.

And, viewing White Masonry's October 1 invoice in the light most favorable to Lee Brick, the Court is unwilling to infer from the invoice that "cutting out beams & repair work" means that ACC Construction and White Masonry were engaged in remedial work as of October 1. It is unclear from the invoice whether "cutting out beams" is a form of repair work, or what constituted the "repair work" listed on the invoice. The invoice says "****SEE ATTACHED****," but ACC Construction and Liberty Mutual did not include the attachment in

support of their motion, nor did they identify "Cecil & Mason." They also did not explain what "grouting tops for Hoosier" means, much less argue that "grouting tops" is repair work.

Lee Brick relies on its October 9, 2012 work order (DN 64-1), its October 10, 2012 invoice to White Masonry (DN 64-2), and White Masonry's admission (DN 36-1) to argue that White Masonry received materials from Lee Brick after October 7, 2012. (DN 64.) Both the October 9 work order and the October 10 invoice say "CUSTOMER PICK UP." (DNs 64-1 & 64-2.) Viewing this evidence in the light most favorable to Lee Brick, it is reasonable to infer from these two documents that White Masonry picked up materials for the Fort Knox Project from Lee Brick after October 7, 2012.

As to White Masonry's admission, ACC Construction and Liberty Mutual are right to point out that White Masonry's admission cannot bind them. That admission said:

> **REQUEST NO. 2**: Forrest White received the services and/or materials from Lee Brick for each of the invoices more specifically described and set forth on the statement of account attached to and incorporated by reference as Exhibit "A" to the Plaintiff's Complaint.
>
> **RESPONSE**: Admit.

(DN 36-1, #358.) Still, on summary judgment, the Court must view the evidence in the light most favorable to Lee Brick, and the Court must draw all reasonable inferences in Lee Brick's favor. With this standard in mind, the Court cannot ignore the fact that White Masonry admitted receiving the materials on the October 10, 2012 invoice. While the admission is only *binding* on White Masonry, the existence of the admission nonetheless creates an issue of fact that precludes summary judgment in favor of ACC Construction and Liberty Mutual.

For these reasons, there remains a genuine dispute of material fact as to whether Lee Brick supplied materials pursuant to the original contract or for remedial purposes after October

7, 2012. Therefore, ACC Construction and Liberty Mutual have not shown that the statute of limitations bars Lee Brick's Miller Act action.

Accordingly, the Court will deny ACC Construction and Liberty Mutual's motion for summary judgment.

## II. Lee Brick's motion for summary judgment

Lee Brick argues that there is no genuine issue of material fact with regard to its claims against White Masonry, ACC Construction, and Liberty Mutual. (DN 62, #549 – 51.)

White Masonry did not respond to Lee Brick's motion for summary judgment.

The Court "cannot grant summary judgment in favor of a movant simply because the adverse party has not responded." *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991). Under Rule 56(e), if a party fails to properly address another party's assertion of fact, the court may "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e). Thus, at a minimum, the Court must determine whether Lee Brick has met its initial burden of demonstrating the absence of a genuine issue of material fact. 946 F.2d at 454 – 55.

Lee Brick relies on the affidavit of Lisa Meacham (DN 62-2) and White's admissions (DN 36-1). (DN 62, #549 – 50.) Lee Brick also argues that White Masonry has offered no evidence in support of its counterclaim. (*Id.* at #552 – 53.)

Meacham is Lee Brick's Assistant Controller and handles Lee Brick's Accounts Receivable. (DN 62-2, ¶ 2.) Meacham's affidavit says,

> The Affiant states that a true and accurate copy of the Lee Brick Statement of Account for the Forrest White account for services and materials furnished by Lee Brick on the Mt. Zussman expansion project, Ft. Knox, Kentucky, in the amount of $105,804.32, was attached as Exhibit "A" to Lee Brick's Complaint filed in the pending action. The principal sum of $105,804.32 remains due and owing and totally unpaid to date.

10

(*Id.*, ¶ 3.)

Although White Masonry did not respond to Lee Brick's motion for summary judgment, its answers to written discovery requests contradict Meacham's affidavit. First, in a response to an interrogatory, White Masonry disputed Lee Brick's assertion that it owes Lee Brick for the Fort Knox Project. (DN 36-1, #357.) Second, in a response to a request for admission, White Masonry denied that Lee Brick's Statement of Account for White Masonry's account was a true and accurate copy of that document. (*Id.* at #358.)

White Masonry admitted that it received the materials for each of the invoices described in Lee Brick's account statement, and it admitted that the amount of Lee Masonry's claim for the Fort Knox Project is $105,804.32. (DN 36-1, #358.) Still, White Masonry denied that it owes $105,804.32. (*Id.* at #367.) To recap, White Masonry's counterclaim alleges that Lee Brick owes White Masonry $110,000 for the Fort Campbell Project, and that the amount Lee Brick owes White Masonry offsets the amount White Masonry owes Lee Brick. (*See* DN 6, ¶ 10.)

ACC Construction and Liberty Mutual argue that although White Masonry has not produced documents in support of its claim for damages, that failure "does not preclude a trier of fact from deciding the issue." (DN 63, #564.) And, they argue, "Lee Brick has only succeeded in pointing out that White Masonry lacks certain documents to support its testimony, which is not a sufficient basis for summary judgment under Celotex and its progeny." (*Id.* at #565.)

To the contrary, *Celotex* and its progeny teach that a party's failure to present evidence in support of an element of its claim at the summary judgment stage precludes the Court from permitting that claim to proceed to trial. *Celotex* in particular mandates the entry of summary judgment against White Masonry on its counterclaim because White Masonry has the burden of

proving its counterclaim at trial, and White Masonry has offered no evidence in support of its counterclaim. 477 U.S. at 322.

Given that summary judgment is appropriate for Lee Brick on White Masonry's counterclaim, it follows that summary judgment is appropriate in favor of Lee Brick on its claims against the Defendants. White Masonry admitted the amount of Lee Brick's claims, and it relied on its counterclaim in denying that it owed Lee Brick any money. Without White Masonry's counterclaim, there is no genuine issue of material fact on Lee Brick's claims against the Defendants, and Lee Masonry is entitled to judgment as a matter of law on those claims.

The Court will grant summary judgment to Lee Brick on White Masonry's counterclaim. The Court will grant summary judgment to Lee Brick on its claims against the Defendants.

## Order

The Court **DENIES** ACC Construction and Liberty Mutual's motion for summary judgment (DN 68). The Court **GRANTS** Lee Brick's motion for summary judgment (DN 62). The Court **DENIES as moot** Lee Brick's motion for a hearing (DN 65).

The Court will enter a final judgment in accordance with this opinion.